# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | |
|---|---|
| MARCUS TERRELL HICKS | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 3:22-cv-368 |
| | ) |
| MEDIKO, INC. | ) |
| | ) |
| and | ) |
| | ) |
| VIRAT BAKHSHI, MD | ) |
| | ) |
| and | ) |
| | ) |
| JASMINE DRUMMOND, LPN | ) |
| | ) |
| and | ) |
| | ) |
| STACY BROOKS, LPN | ) |
| | ) |
| and | ) |
| | ) |
| PATRICK SIMMS | ) |
| | ) |
| Defendants. | ) |

## FIRST AMENDED COMPLAINT

Plaintiff Marcus Terrell ("Mr. Hicks"), by counsel and for his First Amended Complaint seeking judgment against Defendants MEDIKO, Inc., Virat Bakhshi, MD, Jasmine Drummond, LPN, Stacy Brooks, LPN, and Patrick Simms (collectively, "Defendants"), respectfully states as follows:

## JURISDICTIONAL STATEMENT

1.      This Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) over Mr. Hicks' 42 U.S.C. § 1983 claim asserted herein. This Court has supplemental jurisdiction over Mr. Hicks' state law claims pursuant to 28 U.S.C. § 1367.

2.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the acts and omissions giving rise to Mr. Hicks' claims occurred within the Eastern District of Virginia.

3.      Assignment to the Richmond Division of the Eastern District of Virginia is proper pursuant to Eastern District of Virginia Local Rules 3(B)(4) and 3(C), because a substantial part of the acts and omissions giving rise to Mr. Hicks' claims occurred in Richmond, Virginia.

## PARTIES

4.      Mr. Hicks is and was, at all times relevant to this action, a citizen of the United States of America and the Commonwealth of Virginia. At all times relevant to this action, Mr. Hicks was a pretrial detainee being held at Richmond City Justice Center ("RCJC").

5.      Defendant MEDIKO, Inc. ("MEDIKO") is and was, at all times relevant to this action, under contract with the City of Richmond to provide medical care to the inmates and detainees held at RCJC.

6.      Defendant Virat Bakhshi ("Dr. Bakhshi") is and was, at all times relevant to this action, an individual employed by MEDIKO to provide medical care to the inmates and detainees held at RCJC.

2

7.     Defendant Jasmine Drummond, LPN ("LPN Drummond") is and was, at all times relevant to this action, an individual employed by MEDIKO to provide medical care to the inmates and detainees held at RCJC.

8.     Defendant Stacy Brooks, LPN ("LPN Brooks") is and was, at all times relevant to this action, an individual employed by MEDIKO to provide medical care to the inmates and detainees held at RCJC.

9.     Defendant Patrick Simms ("Mr. Simms") is and was, at all times relevant to this action, an individual employed by MEDIKO to provide medical care to the inmates and detainees held at RCJC.

## FACTUAL ALLEGATIONS

10.     The allegations in this complaint arise out of objectively substandard care Mr. Hicks received while detained at RCJC.

11.     At all times relevant, Mr. Hicks was a pretrial detainee being housed at RCJC.  He has subsequently been released.

12.     At all times relevant, Dr. Bakhshi was a licensed medical doctor employed by MEDIKO to provide appropriate and adequate medical care to the inmates and detainees at RCJC, including Mr. Hicks. Dr. Bakhshi's acts/omissions as described herein were done in the scope and course of his employment with MEDIKI.

13.     At all times relevant, LPN Drummond and LPN Brooks were licensed practical nurses ("LPNs") employed by MEDIKO to provide appropriate and adequate medical care to the inmates and detainees at RCJC, including Mr. Hicks. LPN Drummonds' and LPN Brooks' acts/omissions as described herein were done in the scope and course of her employment with MEDIKO.

3

14.     At all times relevant, Mr. Simms was a medical technician employed by MEDIKO to provide appropriate and adequate medical care to the inmates and detainees at RCJC, including Mr. Hicks. Mr. Simms's acts/omissions as described herein were done in the scope and course of his employment with MEDIKO.

15.     On or about August 13, 2020, Mr. Hicks was booked into RCJC.

16.     On the evening of May 16, 2021, Mr. Hicks woke up in his housing pod to severe and sharp pain in his right testicle.

17.     Mr. Hicks informed a deputy of his symptoms, and the deputy contacted a member of the medical staff to relay this information.

18.     At approximately 10:50 pm, LPN Brooks arrived at the pod where Mr. Hicks was housed. Mr. Hicks informed her that he was experiencing severe pain in his right testicle, that this pain was a 10 out of 10 on the pain scale, that this pain was radiating to his abdomen area, and that he felt a painful lump in his right testicle.

19.     Rather than informing a doctor, registered nurse, or physician's assistant of Mr. Hicks' symptoms or seeking emergency care for Mr. Hicks, LPN Brooks merely provided Mr. Hicks with a sick call request form and ibuprofen.

20.     Mr. Hicks filled out the sick call request form, gave it to LPN Brooks, and attempted to go to sleep.

21.     The next morning, Mr. Hicks continued to experience extreme pain and swelling in his right testicle. The pain was so severe at this time that Mr. Hicks had difficulty walking. He notified the deputies of his ongoing symptoms and that he had submitted a sick call request form the prior evening.

22.     The deputies contacted the medical unit, informed them that Mr. Hicks was still

4

experiencing severe pain and swelling in his right testicle, and asked that Mr. Hicks be seen in the medical unit.

23.     At that time, LPN Drummond and Dr. Bakhshi were working in the medical unit. LPN Drummond was responsible for scheduling Dr. Bakhshi's appointments at RCJC.

24.     LPN Drummond informed Dr. Bakhshi that Mr. Hicks' right testicle was extremely swollen and causing him severe pain. Dr. Bakhshi declined to take any action to ensure that Mr. Hicks received prompt medical treatment for his condition. Rather, he merely instructed LPN Drummond to set up an appointment for him to see Mr. Hicks at a later time.

25.     Alternatively, LPN Drummond failed to fully communicate Mr. Hicks' testicular torsion symptoms to Dr. Bakhshi and declined to take any further steps to ensure Mr. Hicks received prompt medical treatment for his condition.

26.     LPN Drummond then informed the deputies that the medical staff was too busy to see Mr. Hicks at that time.

27.     Later that day, Mr. Simms was passing out medication in Mr. Hicks' housing pod during pill pass.

28.     At that time, Mr. Hicks told Mr. Simms that the pain and swelling in his right testicle had not improved even after taking the ibuprofen given to him by LPN Brooks.

29.     Rather than informing a doctor, registered nurse, or physician assistant of Mr. Hicks' symptoms or seeking emergency care for Mr. Hicks, Mr. Simms also responded by merely providing Mr. Hicks with ibuprofen.

30.     On May 18, 2021, two days after he first began experiencing his testicular torsion symptoms, Mr. Hicks was still experiencing severe pain and swelling in his right testicle and was finally sent to the medical unit for a medical assessment.

31.     After performing a medical assessment of Mr. Hicks, an LPN noted that Mr. Hicks was in extreme pain and that his right testicle was severely swollen. She immediately recognized that Mr. Hicks was experiencing a medical emergency and informed RCJC deputies that Mr. Hicks needed to be sent to the emergency room.

32.     Mr. Hicks was transported to the emergency room at VCU Health, where medical providers diagnosed him with testicular torsion.

33.     Testicular torsion occurs when a testicle rotates and twists the spermatic cord that brings blood to the scrotum. The reduced blood flow causes sudden and severe pain and swelling in the affected testicle. Abdominal pain, swelling of the scrotum, and sudden, severe pain in the affected testicle are all indicators of testicular torsion. Testicular torsion is considered a medical emergency and must be treated as promptly as possible to avoid severe damage to and/or loss of the testicle.

34.     The medical providers at VCU Health took Mr. Hicks to the operating room, where they initiated exploratory surgery. They subsequently found that his right testicle was necrotic and nonviable and surgically removed it.

35.     Because of the extreme and objectively unreasonable delay in treatment for his testicular torsion, Mr. Hicks was forced to experience extreme pain and swelling in his right testicle for approximately 48 hours and eventually had to have his right testicle removed.

## COUNT I
**42 U.S.C. § 1983 - Deliberate Indifference to Serious Medical Need in Violation of the Fourteenth Amendment**
**Defendants Virat Bakhshi, MD, Nurse Jasmine Drummond, Nurse Stacy Brooks and Patrick Simms**

36.     Mr. Hicks realleges the foregoing paragraphs of this Complaint as if fully alleged herein.

37.     By virtue of MEDIKO's contract with the City of Richmond, Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms were acting under color of state law in performing their medical duties at RCJC and were required to provide Mr. Hicks with constitutionally adequate medical care for his objectively serious medical needs within the meaning of controlling decisional law.

38.     Mr. Hicks, as a pretrial detainee being held at RCJC, had a constitutional right to receive the medical care necessary to address his serious medical needs under the Fourteenth Amendment.

39.     At all times relevant to this action, Mr. Hicks' testicular torsion constituted an objectively serious medical need. Even a lay person would recognize that severe pain and swelling in a testicle lasting for several hours requires emergency medical care.

40.     Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms were subjectively aware of Mr. Hicks' objectively serious medical need and drew the inference that it was medically necessary to obtain emergency medical care for Mr. Hicks.

41.     Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms knew, and were trained to know, that testicular torsion occurs when a testicle rotates and twists the spermatic cord that brings blood to the scrotum.

42.     Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms knew, and were trained to know, that pain and swelling in a testicle is an objective symptom of testicular torsion.

43.     Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms knew that the medical unit at RCJC did not have the necessary diagnostic equipment to properly assess and diagnose Mr. Hicks' testicular torsion.

44.     Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms knew that the medical unit at RCJC did not have the modalities available to properly treat Mr. Hicks' testicular torsion.

45.     Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms knew that failure to treat Mr. Hicks' testicular torsion was likely to cause permanent damage to his testicle and/or reproductive system.

46.     Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms knew that, left untreated, Mr. Hicks' symptoms posed an excessive risk of further unnecessary infliction of pain.

47.     Despite this knowledge, and particularly in the face of Mr. Hicks' documented, reported, and worsening symptoms, Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms disregarded the excessive risk to Mr. Hicks' health by failing to properly assess or evaluate his condition and by failing to provide anything beyond *de minimis* care for Mr. Hicks for approximately 48 hours despite the urgency of his condition.

48.     Dr. Bakhshi's, LPN Drummond's, LPN Brooks', and Mr. Simms' refusal to properly examine Mr. Hicks, refusal to call or consult with any specialist, refusal to send Mr. Hicks offsite for any evaluation or treatment in a timely manner, and refusals to send Mr. Hicks to the hospital in a timely manner occurred with subjective awareness of and deliberate indifference toward Mr. Hicks' objectively serious medical needs and agony.

49.     Alternatively, and to the extent that the holding of Kingsley v. Hendrickson, 576 U.S. 389 (2015), applies to this case, Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms were ***objectively*** aware of Mr. Hicks' objectively serious medical need and acted in a constitutionally unreasonable manner in choosing not to obtain emergency medical care for Mr. Hicks when they learned of his symptoms of testicular torsion—a condition they knew to be a medical emergency.

50.     As a direct and proximate result of Dr. Bakhshi's, LPN Drummond's, LPN Brooks', and Mr. Simms' refusal to offer Mr. Hicks timely, adequate, and compassionate medical care and their deliberate indifference to Mr. Hicks' serious medical need, Mr. Hicks suffered physical injury, incredible pain, humiliation, and anguish.

51.     Further, Mr. Hicks respectfully asks that this Court award him expenses that he reasonably incurs in this litigation, including reasonable attorneys' fees and expert fees, pursuant to 42 U.S.C. § 1988(b) and (c).

## COUNT II
### Negligence/Gross Negligence
### Defendants MEDIKO, Inc., Virat Bakhshi, MD, Nurse Jasmine Drummond, Nurse Stacy Brooks, and Patrick Simms

52.     Mr. Hicks realleges the foregoing paragraphs of this Complaint as if fully alleged herein.

53.     At all times relevant to this action, Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms were medical care providers, as defined by Va. Code § 8.01-581.1, providing Mr. Hicks with health care services.

54.     At all times relevant to this action, Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms, while acting in the course and scope of their employment and/or agency with MEDIKO, owed Mr. Hicks a duty to exercise that degree of care, skill, and diligence ordinarily exercised by health care providers in the Commonwealth of Virginia in application of their skills in their profession.

55.     Dr. Bakhshi, LPN Drummond, LPN Brooks, and Mr. Simms breached their duties of care owed to Mr. Hicks and, through their individual acts and omissions, committed medical negligence upon Mr. Hicks in the following ways:

a.     Failing to evaluate Mr. Hicks' condition;

9

b. Failing to provide timely or adequate treatment for Mr. Hicks' condition;

c. Failing to exercise reasonable care in promptly identifying and treating Mr. Hicks' emergency medical condition;

d. Denying Mr. Hicks access to care for his condition;

e. Unreasonably delaying in sending Mr. Hicks offsite for emergency and/or specialty urological evaluation and treatment; and

f. Other negligent acts or omissions to be developed in the course of discovery.

56. Each of the above identified breaches of Dr. Bakhshi's, LPN Drummond's, LPN Brooks', and Mr. Simms' common law duties of care represent independent failures to exercise any care or scant prudence to provide Mr. Hicks with adequate medical care for his emergency medical condition.

57. In addition to the above-stated theory of direct liability, each of Dr. Bakhshi's, LPN Drummond's, LPN Brooks', and Mr. Simms' breaches of their common law duties of care were negligent and grossly negligent acts and/or omissions committed by a MEDIKO employee acting within the course and scope of their employment – thereby rendering MEDIKO liable for those tortious acts and omissions under the doctrine of *respondeat superior*.

58. As a direct and proximate result of Dr. Bakhshi's, LPN Drummond's, LPN Brooks', and Mr. Simms' refusal to offer Mr. Hicks timely, adequate, and compassionate medical care and their deliberate indifference to Mr. Hicks' serious medical need, Mr. Hicks suffered physical injury, incredible pain, disfigurement humiliation, anguish.

## DAMAGES

59. As a direct and proximate result of Defendants' unconstitutional and tortious conduct as set forth above, Mr. Hicks suffered the following physical and emotional injuries and

10

damages: bodily injury, past, present, and that which he may reasonably be expected to suffer in the future; physical pain and mental anguish, past, present, and that which he may reasonably be expected to suffer in the future; inconvenience, past, present, and that which he may reasonably be expected to suffer in the future; medical expenses, past, present, and that which he may reasonably be expected to suffer in the future; and disfigurement, deformity, and any associated humiliation or embarrassment; and Mr. Hicks has otherwise been damaged.

Accordingly, Marcus Terrell Hicks demands judgment against MEDIKO, Inc, Virat Bakhshi, MD, Jasmine Drummond, LPN, Stacy Brooks, LPN and Patrick Simms, individually, as well as jointly and severally, in the sum of TWO MILLION DOLLARS ($2,000,000.00) in compensatory damages and ONE MILLION DOLLARS ($1,000,000) in punitive damages, pursuant to 42 U.S.C. § 1988, plus prejudgment and post-judgment interest, costs, and attorney's fees, pursuant to 42 U.S.C. § 1988,  expended in this action.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

MARCUS TERRELL HICKS

_____/s/_____
Jonathan E. Halperin – VSB No. 32698
Andrew Lucchetti – VSB No. 86631
Helen T. Vu – VSB No. 95051
Halperin Law Center, LLC
4435 Waterfront Drive, Suite 100
Glen Allen, VA  23060
Phone: (804) 527-0100
Facsimile: (804) 597-0209
jonathan@hlc.law
andrew@hlc.law
helen@hlc.law

11